**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JOHN HEUBLEIN,

                        *Plaintiff,*

  vs.

                             Case No. 09-CV-1280 EFM-KGG

JON WEFALD, et al.,

                     *Defendants.*

**MEMORANDUM AND ORDER**

In this case, Plaintiff John Heublein is challenging the actions taken by his employer, Kansas State University, and several of his colleagues in response to complaints about his behavior. In his complaint, Heublein asserts a section 1983 claim, alleging violations of his procedural and due process rights, free speech rights, and academic freedom rights, and two state law claims, defamation and breach of contract. Defendants have filed a motion to dismiss Plaintiff's complaint (Doc. 16). For the reasons stated below, the Court finds that Plaintiff has failed to state a federal cause of action and that Defendants' motion should be granted. However, before dismissing Plaintiff's action, the Court will grant Heublein leave to file an amended complaint by February 28, 2011, with respect to his procedural due process claim. If Plaintiff fails to file an amended complaint by that day that cures the pleading deficiencies noted herein, his action will be dismissed.

-1-

# BACKGROUND[1]

Plaintiff John Heublein is a tenured professor of mathematics at Kansas State University ("KSU") at Salina. On or about September 20, 2007, a female student made a complaint to her advisor that Heublein, her trigonometry professor, had graded her homework differently than a male student in her class, had made sarcastic remarks, and had cracked jokes about women in her class. The student's complaint was forwarded on to Defendant David Delker, Associate Dean of Academics at the KSU-Salina Campus, who in turn forwarded it on to Defendant Clyde Howard, Director of the Affirmative Action Office ("AAO") for KSU. Howard and Defendant Nancy Mosier, a part-time professor, were tasked with the job of reviewing the complaint. Heublein alleges that Defendant Dennis Kuhlman, Dean of the Arts, Sciences, & Business Department at the KSU-Salina Campus, Defendant M. Duane Nellis, KSU's Provost, and Howard knew that Mosier could not be impartial toward him. According to Heublein, the appointment of a partial person to the administrative team was a violation of university policy.

On September 26, 2007, Howard and Mosier concluded that no sexual harassment had occurred. According to Heublein, pursuant to university policy, he should have been informed of the team's conclusion, which he was not, and no further action should have been taken. However, Howard and Mosier prepared a written report for the Associate Dean that was based in part on information supplied by Mosier, which Heublein claims was unfounded. Before the report was submitted, Mosier resigned. In her resignation email, Mosier admitted that it was hard for her to be

---

[1]The information contained in this section is gleaned from the well-pleaded allegations in Plaintiff's complaint and the materials that Plaintiff attached to his response that are proper for the Court to consider at this juncture in the litigation, namely the October 8 report, Kuhlman's October 19 letter, the grievance panel's written report, and Wefald's November 19 letter. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007) (stating that a court can consider at the motion to dismiss stage those documents whose authenticity are not questioned and are central to the plaintiff's claim).

objective and insinuated that Heublein would harm her if he knew her involvement in the resolution of the complaint. In spite of Mosier's profession, Howard submitted the report to Delker on October 8. The report recommended that Delker talk to administrators, students, faculty, and Heublein in order to develop a corrective action plan ("CAP") in response to credible reports from students and administrators that Heublein had engaged in discourteous behavior toward students and faculty for many years. Howard's recommendation was based on four factors: first, information from a 1997 case that revealed that prior to 1987 students had complained to administrators that Heublein belittled them and that faculty and staff had complained that Heublein showed hostility toward women faculty members; second, the student's September 20, 2007, complaint; third, reports from Defendant Don Von Bergen, Department Head of the Art, Sciences, and Business Department, that students have complained to him about Heublein saying demeaning things to them; and fourth, Mosier's report that she resigned from the team out of fear that Heublein might injure her if he found out that she was involved.

After receiving the report, and without verifying its content, Delker forwarded it on to Defendant Kuhlman. On October 19, Kuhlman mailed Heublein a letter, stating that the AAO had completed an investigation stemming from an incident involving Heublein's actions, and had provided him with a written report. The letter further stated that the AAO's report had concluded that over the past twenty years, faculty and students have complained about his discourteous comments, and that in both 1997 and 1998 Heublein had made inappropriate comments to faculty members. It also listed a number of negative observations Kuhlman had made based on the available information, e.g., despite being told repeatedly that his conduct needed to improve, Heublein still acted discourteous to fellow faculty members and students. The letter concluded by

stating that Kuhlman had determined that Heublein needed to work with Von Bergen to develop a CAP[2] (a requirement Heublein contends is not recognized in any university handbook), that Heublein would not be assigned any teaching duties for the summer semester of 2008, and that Heublein's inability to correct his behavior would result in Kuhlman's recommendation that Heublein's employment be terminated. Heublein requested that Kuhlman send him a copy of the report on which he based his determinations. Kuhlman denied the request; however, he did send Heublein a paraphrased version, which Heublein alleges did not accurately reflect the actual report.

Soon after receiving Kuhlman's letter, Heublein filed an administrative appeal to the Provost, Defendant M. Duane Nellis. Nellis affirmed the requirements listed in Kuhlman's letter. However, he required the term "investigation" be stricken from the letter because it did not accurately reflect the efforts of the AAO team. According to Heublein, when deciding his appeal, Nellis accepted the October 8 report as being true and without performing his own investigation.

On February 22, 2008, Kuhlman sent Heublein a revised letter. This letter differed from the first in two ways: first, it did not contain the term "investigation," and second, it stated that Heublein would have to develop and abide by CAPs for the next five years. Heublein submitted, through his attorney, a CAP sometime in the spring of 2008. On May 21, 2008, Kuhlman sent Heublein another letter, stating: "Your refusal to develop a CAP in a cooperative manner with your Department Head, Dr. Don Von Bergen and your use of an independent attorney for official communication is clearly outside of the University dispute resolution process. Therefore, there is little to be gained from

---

[2]The letter did not say how many semesters or years that Heublein would have to abide by this requirement.

further University attempts for resolution."[3]  According to Heublein, the last two letters sent by Kuhlman were sent in retaliation for his administrative appeal and use of an attorney in the process.

On June 23, 2008, in accordance with the university's handbook, Heublein filed a grievance against Kuhlman and Von Bergen.[4]  A grievance panel was duly convened and a hearing was held on October 15, 2008.  On November 13, 2008, the panel issued a written report, which set forth the following findings: (1) that Von Bergen and Kuhlman did not violate university policy by initiating an investigation into the student's complaint; (2) that Von Bergen and Kuhlman had reasonable cause for review and initiation of corrective measures, as there was a basis for concern about Heublein's behavior toward students and others; (3) that the recommended course of remedial action – i.e., having to create CAPs for five years – went beyond what the situation merited; (4) that it was an unwise decision to chose someone to be part of the review team who had a history of poor relations with Heublein; (5) that the October 8 report was flawed because of Mosier's participation and the fact that it contained unverified accusations dating back more than twenty years; and (6) that Kuhlman's October 19 letter was unnecessarily combative.  Based on its findings, the panel recommended that the President of KSU take the following actions: (1) order Heublein to develop, submit, and execute a CAP for the Spring 2009 and Fall 2009 semesters, submit student evaluations, and seek professional counseling to address the concerns of inappropriate conduct toward students and others; (2) grant Heublein a full opportunity to acquire summer teaching assignments; (3) remunerate Heublein for legal fees he incurred from the grievance hearing; and (4) remove the

---

[3]Doc. 1, at ¶ 38.

[4]After filing his grievance, Plaintiff received a copy of the October 8 report.

October 8 letter from Heublein's personnel file and replace it with a letter stating that the AAO determined that the student's complaint of discrimination had no merit.

Upon receipt of the report, on November 19, 2008, Wefald took the following actions: (1) he required Heublein to develop, submit, and execute a CAP for the Spring 2009 and Fall 2009 semesters, to submit all student evaluations, and to document the professional counseling he had received to address the concerns of inappropriate conduct toward students and others; (2) he conditioned Heublein's ability to teach summer school on the completion of the CAPs for 2009; (3) he denied Heublein's request for remuneration of legal fees, finding that Kuhlman's and Von Bergen's actions were not sufficient to warrant reimbursement; and (4) he directed that an addendum describing the panel's findings be attached to the October 8 report.

On September 10, 2009, Heublein filed this action under 42 U.S.C. § 1983, asserting claims of (1) deprivation of procedural due process, (2) deprivation of substantive due process, (3) infringement upon and retaliation against his exercise of his free speech rights; and (4) infringement upon his right to academic freedom. Additionally, Heublein asserted a state law breach of contract claim and a state law defamation claim. Defendants have filed a motion to dismiss (Doc. 16). For the reasons stated below, the Court finds that Plaintiff has failed to state a federal cause of action and that Defendants' motion should be granted. However, before dismissing Plaintiff's action, the Court will grant Heublein leave to file an amended complaint by February 28, 2011, with respect to his procedural due process claim.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[5]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[6]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7]

In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[8]  All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[9]  Allegations that merely state legal conclusions, however, need not be accepted as true.[10]

**ANALYSIS**

Heublein is asserting a fourteenth amendment procedural due process claim, a fourteenth amendment substantive due process claim, a first amendment free speech claim, a first amendment academic freedom claim, a state law breach of contract claim, and a state law defamation claim.  In

---

[5]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[8]*Iqbal*, 129 S.Ct. at 1950.

[9]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[10]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

their motion, Defendants argue that Plaintiff's action should be dismissed because Plaintiff's complaint fails to allege any plausible claims for relief, Defendants are entitled to sovereign immunity, and Defendants are entitled to qualified immunity. Because the Court finds that Plaintiff's complaint fails to adequately allege any plausible claims for relief, the Court does not address Defendants' remaining two arguments at this time.

**Procedural Due Process Claim**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the . . . Fourteenth Amendment."[11] As is clear from the above definition, in order to determine whether an individual has been deprived of their procedural due process rights, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."[12]

Plaintiff has failed to allege an interest sufficient to meet the first prong of the procedural due process test. In his response, Heubelin only claims that Defendants' actions affected his protected interest in continued employment, which spawns from his status of being a tenured professor. However, as pointed out by Defendants, this interest is not at issue here because Plaintiff remains a tenured professor in the mathematics department at KSU. A review of Plaintiff's complaint reveals that four other interests that could potentially meet the first prong could be at issue here. The first is Heublein's interest in the recoupment of the attorney's fees he expended during the grievance process. However, the Tenth Circuit has already rejected the notion that such expenses can give rise

---

[11]*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[12]*Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

to an independent protected property interest.[13]  The second is Heublein's interest in having his

personnel file free of negative reports.  While the Tenth Circuit has yet to address this issue, a

number of other circuits have, with the majority finding that this interest does not give rise to a right

of due process unless the reports caused a loss of stature or pay.[14]  The Court agrees with the

position taken by the majority, and thus, concludes that this interest is also insufficient to meet the

first prong.  The third is Plaintiff's interest in teaching summer school classes and obtaining the

benefits that come from doing so.  It is well established in this Circuit that in order to have a

protected interest in a benefit, a person must have a legitimate claim of entitlement to it.[15]  Here,

Plaintiff has not alleged that he had a contractual right or some other type of entitlement to teach

summer school.  Therefore, this interest is not sufficient to give rise to a due process claim.[16]  The

fourth is Heublein's interest in his professional reputation.  In order for harm to one's professional

reputation to serve as the basis of a procedural due process claim, the plaintiff must demonstrate:

(1) "statements [that] impugn the good name, reputation, honor, or integrity of the employee;" (2)

"the statements [were] false;" (3) the "statements . . . occur[red] in the course of terminating the

employee or must foreclose other employment opportunities;" and (4) "the statements [were]

---

[13]*See Workman v. Jordan*, 32 F.3d 475, 480 n.4 (10th Cir. 1994) (finding that the attorney fees that the plaintiff had expended during a grievance procedure do not give rise to an independent protected property interest).

[14]*See Bloodworth v. City of Phoenix*, 26 Fed. Appx. 679, 682 (9th Cir. 2002) (does not give rise to due process); *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 724 (2d Cir. 1994); *Gillard v. Norris*, 857 F.2d 1095, 1097-99 (6th Cir. 1988) (same); *Lowe v. Kan. City, Mo. Bd. of Police Comm'rs*, 841 F.2d 857, 858 (8th Cir. 1988) (same); *Linhart v. Glatfelter*, 771 F.2d 1004, 1008-09 (7th Cir. 1985) (same).  *But see Newman v. Massachusetts*, 884 F.2d 19, 24-25 n.5 (1st Cir. 1989) (suggesting that a letter of censure could substantially damage the plaintiff's property interest); *Little v. City of N. Miami*, 805 F.2d 962, 969 (11th Cir. 1986) (same); *Swilley v. Alexander*, 629 F.2d 1018, 1022 n.4 (5th Cir. 1980) (same).

[15]*See Potts v. Davis County*, 551 F.3d 1188, 1193 (10th Cir. 2009).

[16]*See Powell v. Fujimoto*, 119 Fed. Appx. 803, 807 (7th Cir. 2004).

published."[17]  In this case, the third requirement is not met, as Plaintiff has not alleged that he has lost the ability to work in his chosen field or even that he was terminated from KSU.[18]  Therefore, for these reasons, Plaintiff has failed to allege an injury to an interest deserving of due process protection, and, thus, has failed to adequately allege a procedural due process claim.

In his response, Plaintiff asks the Court to grant him leave to amend if it finds that he has failed to artfully plead any of his claims.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given "when justice so requires," and thus "district courts may withhold leave to amend only for reasons such as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.' "

The Court cannot say that an amendment to Plaintiff's procedural due process claim would be futile.  If Plaintiff can allege that he had a contractual right to teach summer classes and he was deprived of that right without process or that he suffered a loss in stature or pay due to the placement of negative reports in his personnel file and this loss occurred before he was afforded adequate process, he may have a colorable procedural due process claim.  Therefore, the Court will grant Plaintiff leave to file an amended complaint by March 4, 2011, with respect to his procedural due process claim.  If Plaintiff fails to file an amended complaint by that day that cures the pleading deficiencies noted above, his action will be dismissed.

---

[17]*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 579 (10th Cir. 1996) (quotation marks omitted).

[18]*See Greene v. Barrett*, 174 F.3d 1136, 1141 n.5 (10th Cir. 1999).

**Substantive Due Process Claim**

Government action violates substantive due process when it either deprives an individual of a fundamental right or interest or shocks the judicial conscience.[19] Under the first test, the key inquiry is whether the asserted right or interest, carefully described, is so "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."[20] If the asserted right or interest does not meet the aforementioned standard, the Court then asks whether the government action that caused the deprivation is rationally related to a legitimate governmental interest.[21] With regard to the second test, a substantive due process claim is stated if the plaintiff alleges that the government action in question is "arbitrary and unrestrained by the established principles of private right and distributive justice."[22] "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."[23]

Applying the fundamental rights test first, the Court concludes that Plaintiff has failed to adequately allege a substantive due process claim. After giving all of the rights and interests that Plaintiff's complaint plausibly asserts a careful description, it is clear that none of them are so deeply rooted in this Country's history and traditions that they can be fairly classified as

---

[19]*See Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

[20]*Id.* at 769.

[21]*Id.* at 771.

[22]*Id.* at 767.

[23]*Id.*

fundamental.[24]  Therefore, the challenged government action must be reviewed under the highly

deferential rational basis standard.  Under this standard, the plaintiff has the "burden to negative

every conceivable basis which might support [the government action in question]."[25]  Plaintiff has

not met his burden.  First, it is beyond dispute that the school has a legitimate interest in controlling

the conduct of its faculty.[26]  Second, the complaint's well-pleaded allegations, i.e., those that are

more than mere conclusions, fail to demonstrate that there is no rational relationship beyond this

interest and the actions taken by Defendants that caused a deprivation.  For example, Plaintiff's

complaint does not allege facts indicating that no one has ever complained about Heublein's

behavior or that Heublein is a model of civility and goodwill.  Without allegations along the lines

just described, Plaintiff's complaint fails to raise a plausible inference that the actions challenged

were not rationally related to a legitimate government interest, and, thus, fail to make out a

substantive due process claim under the first test.

Plaintiff's complaint also fails under the second test.  In *Babber v. Ebadi*[27], a case factually

similar to this one, the Tenth Circuit addressed the question of whether the defendants' actions were

sufficiently egregious to make out a substantive due process claim at the summary judgment stage.

---

[24]Thus far, the Supreme Court has recognized only the following groups of rights and interests as meeting the heightened standard: those relating to marriage, family life, child rearing, and reproductive choices. *See Seegmiller*, 528 F.3d at 771.

[25]*Wasatch Pedicab Co. L.L.C. v. Salt Lake City Corp.*, 343 Fed. Appx. 351, 354 (10th Cir. 2009) (quoting *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004)); *see also Teigen v. Renfrow*, 511 F.3d 1072, 1084 (10th Cir. 2007) ("[W]e are not bound by the parties' arguments as to what legitimate state interests the [government action] seeks to further.  In fact, this Court is *obligated* to seek out other conceivable reasons for validating [the action].  Thus, this court must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court.  This determination is a legal question which need not be based on any evidence or empirical data." (internal citations and quotation marks omitted) (emphasis in original)).

[26]*See e,.g., Connick v. Myers*, 461 U.S. 138, 151 (1983).

[27]2000 WL 702428 (10th Cir. May 26, 2000).

There, the plaintiff, a professor at KSU, was denied tenure. In the years leading up to his application for tenure, the plaintiff consistently received positive reviews for both his research and teaching. Despite these facts, though, the plaintiff's application was denied. The stated reason for the denial was the plaintiff's failure to meet the requisite standards for research and collegiality. Following the denial, the plaintiff filed an appeal with the provost. When his appeal was denied, the plaintiff filed a grievance, which was heard before a panel of his colleagues. After conducting two hearings, the panel made the following findings and recommendation to KSU's president, Jon Wefald: (1) that the tenure panel that reviewed the plaintiff's application did not follow the established procedure for evaluating the plaintiff's research; (2) that the tenure panel improperly applied collegiality as a criterion for tenure; and (3) that the college either negotiate a settlement with the plaintiff or grant him tenure. Wefald decided to disregarded the recommendation, opting instead to simply not renew the plaintiff's teaching contract.[28] On appeal, the plaintiff argued that the college's actions violated his substantive due process rights. The Tenth Circuit disagreed, stating that however unfortunate KSU's tenure decision may have been, the plaintiff had simply failed to show that the defendant's actions were so shocking that they merit the judicial override of KSU's tenure decision.[29]

The Court finds *Babbar* instructive. While it is true that Plaintiff's complaint alleges, repeatedly, that Defendants' actions were arbitrary, capricious and without a rational basis, it fails to assert facts that are sufficient to substantiate these conclusory accusations. Plaintiff no doubts believes that his numerous allegations related to various violations of the university's handbook suffice. They do not. As *Babbar* demonstrates, a plaintiff must assert more than simply that the

---

[28]*Id.* at *1-4.

[29]*Id.* at 10.

university and its actors failed to follow policy in order to make out a substantive due process claim. Because Plaintiff allegations do not amount to anything more than simply that Defendants violated various provisions of the university's handbook, the Court concludes that Plaintiff's complaint does not adequately allege a substantive due process claim under the second test.

In sum, the Court finds that Plaintiff has failed to allege a substantive due process claim under either of the aforementioned tests. Because the Court also finds that no amendment to the complaint would enable Plaintiff to allege a colorable substantive due process claim, the Court dismisses this claim without leave to file.

**Freedom of Speech Claim**

In evaluating this type of claim, it is essential for the Court to first identify the speech that was infringed upon or retaliated against.[30] Here, Plaintiff's complaint alleges two types of speech: in class and out of class speech. The Tenth Circuit has suggested, but has not decided, that the test it developed in *Miles v. Denver Public Schools*[31], a case in which a high school teacher claimed that his school had violated his first amendment rights to free speech by taking action against him for comments he made in his classroom, applies to in-class speech made by a college and university professors.[32] Because this test arguably offers Plaintiff more protection than the test set forth by the Supreme Court in *Garcetti v. Ceballos*[33], which appears to govern all other speech made by a

---

[30]*See Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).

[31]944 F.2d 773 (10th Cir. 1991).

[32]*Vanderhurst v. Colo. Mountain Coll. Dist.*, 208 F.3d 908 (10th Cir. 2000).

[33]547 U.S. 410 (2006).

government employee, the Court will apply the *Miles* test to Plaintiff's in-class speech.[34] For the statements made by Plaintiff outside of the classroom, the Court will apply the *Garcetti* test.

As noted by the Tenth Circuit in *Vanderhurst v. Colorado Mountain College District*[35], under the *Miles* test, the key inquiry is whether the actions taken by the college were reasonably related to a legitimate pedagogical interest it has.[36] In this case, KSU ordered Plaintiff to develop a CAP, submit student evaluations, seek counseling, and to refrain from teaching summer school until the CAP requirement was fulfilled. The stated reason for these requirements was Plaintiff's behavior toward his peers and students. In his complaint, Plaintiff does not assert any factual allegations suggesting that the reason given has no basis in fact.[37] Therefore, in light of these facts, the Court finds that Plaintiff's complaint fails to raise a plausible inference that the actions taken by the college were not rationally related to its legitimate interest in the professionalism or conduct exhibited by its professors.[38] As a consequence, Plaintiff's complaint fails to allege a free speech claim with respect to Plaintiff's in-class comments.

Plaintiff also contends that he was retaliated against for speech he made outside of the classroom. This speech can be divided into two categories: first, statements made to peers and

---

[34]If the Court were to apply *Garcetti*, the result would be no different. Plaintiff has not alleged that any of his speech related to a matter of public concern, thus, as discussed below, it is not protected under *Garcetti*. In *Garcetti*, the Supreme Court explicitly stated that it was not deciding whether the standard it was setting forth in that case would apply to speech in a classroom setting. 547 U.S. at 425.

[35]208 F.3d 908.

[36]*Id.* at 914.

[37]While it is true that Plaintiff has alleged that Mosier's statements were made without a basis in fact, he has not alleged that the remedial actions ordered by the university were based solely on these statements. As the documents submitted by Plaintiff that this Court can review at this juncture reveal, other individuals also claimed that Heublein's behavior needed to be adjusted.

[38]*See Miles*, 944 F.2d at 778.

students, and second, statements made during his administrative appeals. Because "a public employee's right to petition for redress of grievances is analyzed no differently than a public employee's right to free speech,"[39] the Court will review both categories under the same four-part test set forth in *Garcetti*: (1) whether the employee was speaking pursuant to his official duties; (2) whether the plaintiff's speech can be fairly characterized as constituting speech on a matter of public concern; (3) whether the employee's interest in commenting upon matters of public concern outweigh the state's interest, as an employer, in promoting the efficiency of the public services it renders; and (4) whether the plaintiff's speech was the motivating factor for the adverse employment action.[40]

Plaintiff's claim fails because it does not meet the second prong of the *Garcetti* test.[41] In order to be considered a matter of public concern, speech must be about more than just an internal personnel dispute or working conditions.[42] Here, the allegations in Plaintiff's complaint do not plausibly suggest that any of Plaintiff's out of class speech touched upon matters of public concern. As a consequence, Plaintiff's complaint fails to allege a free speech claim based on Plaintiff's out of class speech.

In sum, the Court finds that Plaintiff has failed to allege a free speech claim based on either type of speech in which he engaged. Because the Court also finds that no amendment to the

---

[39]*Glover v. Mabrey*, 384 Fed. Appx. 763, 775 (10th Cir. 2010) (citing *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990)).

[40]*See Deutsch v. Jordan*, 618 F.3d 1093, 1097 (10th Cir. 2010).

[41]*See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007) (stating that courts can skip the first prong and dismiss on any of the others prongs).

[42]*Id.* at 1355.

complaint would enable Plaintiff to allege a colorable free speech claim, the Court dismisses this

claim without leave to file.

**Academic Freedom Claim**

Plaintiff's academic freedom claim is unclear at best. It appears that it is premised upon the

fact that the remedial steps that the KSU administration has ordered Plaintiff to take will potentially

alter how Plaintiff interacts with colleagues and students. Based on recent precedent emanating

from other circuits, it seems unlikely that such a claim even exists.[43] However, assuming, without

deciding, that it does, Plaintiff has nevertheless failed to adequately allege that his right to academic

freedom was infringed.

As recognized by one circuit court, the term academic freedom is "often used, but little

explained."[44] While the exact parameters of the freedom are less than clear, it is evident that the

freedom is intended only to prevent government action that "cast[s] a pall of orthodoxy over the

classroom."[45] None of the factual allegations in the complaint suggest that the steps required by

Defendants will cast a pall of orthodoxy over the classroom or inhibit the exchange of ideas inside

of the classroom setting. Contrary to Plaintiff's argument, the complaint's allegations do not

---

[43]*See Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 172 n.14 (3d Cir. 2008) ("[I]t is the educational institution that has a right to academic freedom, not the individual teacher."); *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 593 (6th Cir. 2005) (same), *cert. denied*, 546 U.S. 1175 (2006); *Urofsky v. Gilmore*, 216 F.3d 401, 410 (4th Cir. 2000) (same). The cases cited by Plaintiff are not to the contrary, as they do not specifically address the question of whether a professor can sue his employer for taking actions that allegedly violated his right to academic freedom. *See Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967) (professor challenging a loyalty oath mandated by state law); *Sweezy v. New Hampshire*, 354 U.S. 234 (1957) (plurality opinion) (professor challenging a state attorney general's investigation); *Simineo v. Sch. Dist. No. 16*, 594 F.2d 1353 (10th Cir. 1979) (deciding only the question of whether a jury instruction relating to academic freedom could be given even though the claim was not pled before trial, not whether the claim was viable).

[44]*Urofsky*, 216 F.3d at 410.

[45]*Keyisian*, 385 U.S. at 603; *see also Miles*, 944 F.2d at 779 (stating that, even if the plaintiff had a right to academic freedom, it was not violated because the defendants' actions did not threaten to "cast a pall of orthodoxy over the classroom").

plausibly suggest that the ordered steps will "straight jacket" his teaching style; rather, the allegations, coupled with the materials that Plaintiff has submitted and that the Court can consider at this stage in the litigation, suggest that the remedial steps are merely intended to improve Plaintiff's behavior toward others.  Accordingly, the Court finds that Plaintiff has failed to allege a academic freedom claim.  Because the Court also finds that no amendment to the complaint would enable Plaintiff to allege a colorable academic freedom claim, the Court dismisses this claim without leave to file.

**State Law Claims**

As noted above, Plaintiff also asserts the state law claims of breach of contract and defamation.  Plaintiff's federal claims provide the only basis for this Court to exercise subject-matter jurisdiction over this matter, as there is not complete diversity between the parties.  While a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution,"[46] a court may decline to exercise such jurisdiction where it "has dismissed all claims over which it has original jurisdiction."[47] Indeed, unless "consideration of judicial economy, convenience and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims."[48]  Because Plaintiff's complaint fails to state a viable federal claim,

---

[46]28 U.S.C. § 1367(a).

[47]28 U.S.C. § 1367(c)(3).

[48]*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

and because this case is at the beginning stages of litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this time.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss (Doc. 16) is hereby GRANTED with regard to Plaintiff's substantive due process, free speech, and academic freedom claims. These claims are dismissed with prejudice. However, the Court will grant Plaintiff leave to file an amended complaint by March 4, 2011, with respect to his procedural due process claim. If Plaintiff fails to file an amended complaint by that day that cures the pleading deficiencies noted herein, his action will be dismissed.

**IT IS SO ORDERED**.

Dated this 15th day of February, 2011.

*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE